**In the Matter of BOSTON AND MAINE CORPORATION, Debtor.**

**Bk. No. 70–250–M.**

United States District Court,
D. Massachusetts.

July 3, 1980.

Charles W. Mulcahy, Jr., Boston, Mass., for petitioners; Sidney Weinberg, attorney for Corporation.

### MEMORANDUM AND ORDER

FRANK J. MURRAY, Senior District Judge.

This case came on to be heard on May 6, 1980 on the petition of the Debtor's Trustees for authority to abandon certain segments of the railroad line in Massachusetts between Northampton and Hardwick, known as the Wheelwright Branch. By Order No. 198 (February 7, 1979) the court authorized the Trustees to apply to the Interstate Commerce Commission (ICC) for a

---

**7.** In light of this result, the Rule 9(b) portion of the motion need not be reached.

certificate that the public convenience and necessity would not be unduly or adversely affected by such abandonment. Because of intervening statutory changes, *see* Milwaukee Railroad Restructuring Act, Pub.L.No. 96–101, § 17(a), 93 Stat. 736 (1979), ICC submitted to the court a report, pursuant to provisions contained in 11 U.S.C. § 1170, in which it recommended that abandonment be permitted, subject to certain conditions.

The ICC report and recommendations were based on (a) the Trustees' application of June 12, 1979, (b) petitions to investigate and comments submitted by shippers on the affected segments of the Wheelwright Branch, and (c) verified statements supplied by shippers and other interested parties. The application of the Debtor's Trustees represented that they had agreed to offer the segments of the line owned by Boston and Maine Corporation for sale to the Commonwealth of Massachusetts at liquidation value "in the event authority to abandon the line issues from the [Interstate Commerce] Commission". It was also represented in the application that the Commonwealth "may acquire the line for continued operation by designating a short line operator to continue operations on the line".

The record before the ICC disclosed that although the Debtor's Trustees had not obtained an operating subsidy from the Commonwealth's Executive Office of Transportation and Construction (EOTC) prior to filing the petition for abandonment, the EOTC, in a verified statement filed January 21, 1980, noted availability of funds to it to acquire and rehabilitate railroad lines in Massachusetts, and expressed the intent to take all necessary steps to continue service to shippers on the railroad line by lease or acquisition and by designation of a short line operator. ICC Report, Docket No. AB–32 (Sub-No. 6F) at p. 5.

From the time of the Trustees' application, service was and is now being provided by a short line carrier operating under contract with EOTC. The Massachusetts Central Railroad Corporation, the designated operator, provides service under temporary car service orders issued by ICC.

In the report, the ICC recommended that a decision by this court on the question of abandonment be postponed for a reasonable period to permit expected negotiations to be conducted by Massachusetts Central Railroad Corporation, the Debtor's Trustees, and the EOTC, with a view toward ultimate acquisition or lease of the affected segments of the line. ICC found, as a consequence of the expected negotiations, that no adverse impact on either the shippers or the communities involved would result from the abandonment because "[o]peration of the Wheelwright Branch by the MassCentral, a designated operator under contract with the EOTC . . . [would] . . negate any . . . [such impact]".

Notwithstanding the reasonableness of the course suggested by the ICC based on the record before it, additional facts came to light at the May 6 hearing held by this court on the abandonment petition that undercut the viability of the recommendation that a decision on the abandonment be deferred while the parties negotiate. At the hearing, counsel for the Debtor's Trustees expressed the viewpoint that the federal funds which EOTC might use for acquisition or subsidy of the line "are not available for local rail service assistance for continuance of operation of lines unless prior to such request for assistance the line has been authorized for abandonment by the certificate of public convenience and necessity". (Transcript of May 6 hearing at p. 67). Also, the Assistant Secretary of the EOTC testified that "[a]s a matter of policy, we do not subsidize with federal funds the operation of services where the railroad still has its common carrier obligation to provide service", (Tr. at 66), and agreed that the EOTC was "standing and marking time waiting to see what this Court does with the petition for abandonment". (Tr. at 77–78). From the foregoing it is apparent that the "negotiations" are not only at an impasse, but never did commence. What further complicates the situation is the imminent expiration on July 31, 1980 of the temporary car service orders under which Massachusetts Central Railroad Corporation

is currently providing service to the shippers.

The court finds that the expeditious means of resolving this controversy is to remand to the ICC for reconsideration and possible revision of its findings and recommendations in light of the foregoing facts. As matters stand now, the parties are in a holding pattern and the court does not have the benefit of any expression of the ICC's expertise on the dimensions of the adverse impact that would result to shippers should service be discontinued on the affected segments. In addition, ICC was apparently of the opinion that nothing stood in the way of negotiations between the EOTC, the Massachusetts Central and the Debtor's Trustees as a matter of law. Perhaps an advisory opinion as to the meaning of the eligibility criteria specified in the Local Rail Service Assistance Act of 1978 would be of aid in encouraging the negotiations on which was predicated the ICC's recommendation that the abandonment should be allowed. Finally, there is a great danger that service to the many shippers on the line will be unnecessarily interrupted after July 31, 1980, the date on which the temporary car service orders issued to the Massachusetts Central are scheduled to expire. Such an event at the present time or in the near future would have a grave impact on the Western Massachusetts region.

Accordingly, the court hereby remands to the ICC the report of April 1, 1980 for reconsideration in light of the foregoing, and for possible revision of ICC's findings and recommendations and the submission of a revised report to the court. The court directs that a report of ICC pursuant to this order of remand be served not later than August 7, 1980. A copy of the transcript of the May 6, 1980 hearing held by this court is hereby transmitted to ICC with this order.